UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

EDGAR BRONFMAN, JR.,                              :

                                                  :

      v.                               :          No. 07-CV-2875 (VM)

                                                  :

VIVENDI S.A., THE BENEFIT EQUALIZATION PLAN
OF VIVENDI S.A., AND THE HUMAN RESOURCES     :
COMMITTEE OF THE BOARD OF DIRECTORS OF
VIVENDI S.A.,                                    :

                                                  :

------------------------------------------------------------------ x

## AFFIDAVIT OF DEBRA FORD

STATE OF NEW YORK   )
                           : ss.:
COUNTY OF NEW YORK  )

I, DEBRA FORD, being duly sworn, declare as follows:

      1.      I am the Director of Corporate Transactions at Vivendi Holding I Corp.,

successor-in-interest to Vivendi Universal US Holding Co.

      2.      I submit this declaration in support of the Defendants' motion to

dismiss, to provide information about the attempt to serve the Benefit Equalization Plan

and the Human Resources Committee of the *Conseil de Surveillance* of Vivendi S.A., and

to provide general information about the corporate structure of the Vivendi Defendants.

      3.      I am over the age of 18 and am competent to testify in this action.

4.      I base this affidavit on my personal knowledge of the contents herein.

## PLAINTIFF'S ATTEMPT TO SERVE

5.      On April 18, 2007, a process server arrived at the offices of Vivendi Holding I Corp., at 800 Third Avenue in New York, New York, with the summons and complaint in the above-captioned matter.  A copy of the summons and complaint is attached as Exhibit A hereto.

6.      The process server was directed to me, in my capacity as agent to accept service on behalf of Vivendi Holding I Corp.  I had also been designated to accept service on behalf of Vivendi S.A.  I informed the process server that I could accept service on behalf of Vivendi S.A., one of the three named defendants in this action.

7.      However, I do not have authority – nor does anyone at Vivendi Holding I Corp. – to accept service on behalf of the Benefit Equalization Plan (the "BEP") or the Human Resources Committee of the *Conseil de Surveillance* of Vivendi S.A.  The individual members of the Human Resources Committee have not granted me the authority to accept service on their behalf, nor on behalf of the BEP.

8.      I informed the process server that I did not have authority to accept service on behalf of the Benefit Equalization Plan or the Human Resources Committee, and was refusing service of the summonses directed at those entities on that basis.

9.      The process server thereafter dropped all three summonses (one for each of the defendants) on the receptionist's desk located near where we were talking, and left the building without further comment.

## VIVENDI CORPORATE STRUCTURE

10.     Vivendi S.A., one of the named defendants in this action, is the indirect corporate parent of Vivendi Holding I Corp., a U.S. entity.  Vivendi S.A. is a *societe anonyme* organized under French law.

11.     Vivendi S.A. has a Board of Directors, called the *Conseil de Surveillance*.  Like a Board of Directors of a United States corporation, Vivendi S.A.'s *Conseil de Surveillance* is comprised of directors independent of Vivendi S.A., from various industrial sectors.  The *Conseil de Surveillance* is not an entity with a corporate personality aside from its individual members.

12.     The Human Resources Committee of the *Conseil de Surveillance*, one of the named defendants in this action, is a sub-committee of the *Conseil de Surveillance*, comprised of individual members of the *Conseil de Surveillance*.  The Human Resources Committee is not an independent entity but exists only as a collection of its individual members.

13.     The Benefit Equalization Plan, the third named defendant in this action, is an unfunded pension plan.  The BEP was originally adopted by The Seagram Company Ltd. ( "SCL" and now known as Vivendi Canada Inc.) before  SCL was combined

3

with certain companies to create Vivendi Universal S.A. (now known as Vivendi S.A.),

and is applicable only to a handful of former SCL executives. The Benefit Equalization

Plan, as an unfunded plan, has no trust or trustee and no specified agent for service, and

has no separate corporate identity. The Benefit Equalization Plan is administered by the

Human Resources Committee of the *Conseil de Surveillance* of Vivendi S.A.

Debra Ford

Sworn before me this day *May 7, 2007*

Notary Public

**JAMES R. FISHER**
**Notary Public, State of New York**
Qualified in New York County
No. 02FI5072125
**Commission Expires** *5-18-2011*

4

# Exhibit A

*Judge Marrero*

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

|                 Southern                | **DISTRICT OF** |                 New York                |
| --- | --- | --- |

Edgar Bronfman, Jr.

**SUMMONS IN A CIVIL CASE**

### V.

Vivendi, S.A. ("Vivendi"), the Benefit Equalization
Plan of Vivendi, and the Human Resources
Committee of the Board of Directors of Vivendi

CASE NUMBER:    07 Civ. 2875

TO: (Name and address of defendant)

Vivendi, S.A.
c/o Vivendi Universal US Holding Co.
800 Third Avenue, 5th Floor
New York, New York 10022

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Gandolfo V. DiBlasi
Sullivan & Cromwell LLP
125 Broad St.
New York, NY 10004

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. Michael McMahon
CLERK

April 10, 2007
DATE

Marcos Quintero
(BY) DEPUTY CLERK

AO 440  (Rev. 10/93)  Summons In a Civil Action -SDNY  WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant.  Place where served: _____
_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐   Returned unexecuted: _____
_____
_____
_____

☐   Other *(specify):* _____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
　　　　　　　　　　　Date                                                        Signature of Server

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　Address of Server

(1)　　As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

EDGAR BRONFMAN, JR.,

                                    Plaintiff,

                —against—

VIVENDI S.A. (f/k/a VIVENDI
UNIVERSAL, S.A.), THE BENEFIT
EQUALIZATION PLAN OF VIVENDI S.A.,
and THE HUMAN RESOURCES
COMMITTEE OF THE BOARD OF
DIRECTORS OF VIVENDI, S.A., as
administrator of the BENEFIT
EQUALIZATION PLAN,

                                    Defendants.

## JUDGE MARRERO

**COMPLAINT**

No. **07—CV    2875**

Plaintiff Edgar Bronfman Jr. ("Bronfman"), by his undersigned attorneys, Sullivan & Cromwell LLP, for his Complaint against Vivendi, S.A. ("Vivendi"), the Benefit Equalization Plan of Vivendi ("BEP"), and the Human Resources Committee of the Board of Directors of Vivendi (the "Human Resources Committee"), alleges as follows:

### NATURE OF ACTION

1.      Bronfman is a former Vivendi executive who began drawing a pension from Vivendi when he resigned in 2002.

2.      This dispute arose because, in 2006, Vivendi reduced Bronfman's pension payments by approximately 65 percent, upon discovering an alleged "mistake" in the calculation. Vivendi claimed that it had been erroneously crediting Bronfman for 15 years of "Additional Service," beyond the 20 years of actual service Bronfman had

accrued.  There was no mistake.  The Additional Service at issue was expressly granted

by three separate contracts, and Bronfman was repeatedly given pension statements (both

before and after his resignation) reflecting the Additional Service.

    3.    Vivendi's refusal to honor its commitment violates the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Under

section 502 of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), Bronfman is entitled to

recover, under theories of breach of contract, account stated and equitable estoppel,

damages and interest for Vivendi's wrongful denial of benefits, as well as appropriate

equitable relief.  Bronfman may also recover under those same theories as a matter of

New York common law.

## PARTIES

    4.    Bronfman is a resident of the State and County of New York.  He

was CEO of Seagram Company Ltd. ("Seagram") when it merged with Vivendi in 2000.

He became Executive Vice Chairman of the merged company until his resignation in

March 2002.  After the resignation, Bronfman remained with Vivendi as a consultant,

shareholder and Vice Chairman of the board.  Bronfman was reemployed by Vivendi

from September 2002 until December 2003.

    5.    Vivendi is a global entertainment company that is involved in

(among other things) the music, television and mobile phone businesses.  It is organized

as a *société anonyme*, a form of limited liability company under the laws of the Republic

of France.  From 2000 until 2006, the company was named "Vivendi Universal, S.A."

    6.    Vivendi's agent in the United States is Vivendi Universal US

Holding Co., located at 800 Third Avenue in Manhattan.

- 2 -

7.     The BEP is a pension plan that Seagram established, and which is now administered by Vivendi's Human Resources Committee.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction of this action under 28 U.S.C. § 1331 because Bronfman is seeking, under section 502 of ERISA, to "recover benefits due to him under the terms of" his pension plan, "to enforce his rights under the terms of the plan," to "to clarify his rights to future benefits under the terms of the plan," and to obtain appropriate equitable relief. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3).

9.     Alternatively, this Court has jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and is between a citizen of New York and citizens of a foreign state.

10.    Venue is proper in this Court under 29 U.S.C. § 1132(e)(2), because this district is "where the breach took place," and under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the defendants are subject to personal jurisdiction in this district.  Venue is also proper in this Court because the case arises under, and relates to, an agreement between the parties which states: "[A]ll actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in any federal or state court of competent jurisdiction, located in the Borough of Manhattan, New York."

**STATEMENT OF FACTS**

**The Seagram / Vivendi Executive Pension Plans**

11.     At all relevant times, Seagram and Vivendi offered executives retirement benefits based on (among other things) their years of service and compensation before retirement.

12.     These benefits were contained in three plans:

(a)     a "tax qualified" plan, which would only take into account the executives' compensation within the limits set forth in Section 401 of the Internal Revenue Code (the "Pension Plan");

(b)     a supplemental, non-qualified plan which provided benefits based on compensation that could not be taken into account under the Pension Plan (the "Supplemental Plan"); and

(c)     a second supplemental non-qualified plan whose principal benefit was to allow participants to receive credit for "Additional Service," beyond any actual years of service accrued (the "Benefit Equalization Plan," or "BEP").

13.     Under the BEP, which is the subject of this dispute, participants are awarded benefits under the same basic formula as the Pension Plan, with two exceptions.  First, as with the Supplemental Plan, the compensation taken into account includes bonuses and is not subject to the limits under the Internal Revenue Code.  Second, unique to the BEP, participants may receive credit for Additional Service.

- 4 -

14.     Additional Service is automatically available to BEP participants who retire at age 65 (or age 60 at Vivendi's request), but the BEP specifically allows Vivendi to waive those requirements and award Additional Service to younger participants.

15.     Qualifying BEP participants are granted one year of Additional Service for each year of actual service.  The total years of service are capped at the greater of 35 years or the total years of actual service up to 40, with one exception: persons who retire at age 65 with 35 years actual service are deemed to have accrued 40 years of service.

**The Seagram-Vivendi Merger and Related Agreements**

16.     In December 2000, Seagram merged with Vivendi S.A. and Canal Plus, S.A to become Vivendi Universal S.A.  (The merged company changed its name back to Vivendi S.A in 2006.  The distinction between names is immaterial for purposes of this Complaint.)

17.     In anticipation of the merger, Bronfman and Seagram entered into a Termination Protection Agreement on June 15, 2000, under which Bronfman would receive certain payments and benefits if he were terminated without good cause or if he resigned for certain good reasons.  Included in those payments and benefits was Bronfman's right to "become fully vested in any unfunded pension benefit provided in any nonqualified pension plan . . . including, without limitation, the Benefit Equalization Plan."  Because, as set forth in ¶¶ 12 – 13, the unique feature of the BEP is the ability to earn credit for Additional Service, Bronfman's right to become "fully vested" in the BEP meant that (just like other participants in the BEP) he would be credited for one year of

- 5 -

Additional Service for each year of actual service, subject to the applicable maximums. The contractual language would be rendered meaningless if it were understood to leave Bronfman without any Additional Service (and hence without the unique benefit of the BEP).

18.    In December 2000, after the merger had closed, Bronfman entered into a four-year Employment Agreement with the merged company.  The Employment Agreement allowed Bronfman to "opt-out" of the agreement within thirty days of the first anniversary of employment, and still receive the payments and benefits provided in the Termination Protection Agreement, including "becom[ing] fully vested in any unfunded pension benefit provided in any nonqualified pension plan . . . including, without limitation, the Benefit Equalization Plan."

19.    On December 20, 2001, Bronfman exercised his right to opt-out of the Employment Agreement, and he and Vivendi entered into a Termination Agreement calling for Bronfman to cease being an employee of Vivendi as of March 31, 2002—20 years after his initial hiring on March 15, 1982.  The Termination Agreement expressly provided for the payments and benefits that Bronfman had already secured as part of the Termination Protection Agreement and the Employment Agreement, including "becom[ing] fully vested in any unfunded pension benefit provided in any nonqualified pension plan . . . including, without limitation, the Benefit Equalization Plan."

20.    On his retirement date of March 31, 2002, Bronfman was 46 years old and had accrued 20 years of service with Seagram and Vivendi.  Based on his Bronfman's age and actual service, and based on his contractual right to be "fully vested"

- 6 -

in the BEP, Vivendi began paying Bronfman pension benefits reflecting the full BEP benefit, including 15 years of Additional Service.

**Vivendi's Admissions Regarding Bronfman's Rights**

21.    Vivendi repeatedly made unequivocal statements, both before and after the Termination Agreement, that Bronfman would receive the full benefit of BEP, including the maximum service credit of 35 years (20 years of actual service plus 15 years of Additional Service).  For instance:

(a)    On August 9, 2001, Andrew Loyst, Vivendi's Vice President for North America Compensation and Benefits, sent an email to John Borgia, Vivendi's Executive Vice President for Human Resources, attaching Bronfman's pension estimate that included 15 years of Additional Service under the BEP.

(b)    On December 5, 2001, Borgia emailed Bronfman "attempt[ing] to list all the details regarding the arrangement between EBj [sic] and VU," and stated that the "Seagram pension [was] calculated *according to BEP schedule* . . . " (emphasis added).

(c)    On January 25, 2002, Loyst sent a memo to Bronfman's accountants enclosing Bronfman's pension summary, which included the full BEP benefit.

(d)    On April 26, 2002, Susan Szutka, Vivendi's Human Resources Director, sent an email to one of Bronfman's

attorneys attaching a pension benefit schedule that included the full BEP benefit.

(e)    On May 6, 2002, Loyst sent an email to Bronfman's attorney in which he indicated that Vivendi "honored the BEP." The email discusses technical aspects of the calculation, and confirms that the BEP calculation was vetted by Daniel Losito, a Vivendi in-house lawyer who was copied on the email.

(f)    On May 20, 2002, Szutka sent an email to Bronfman's accountant regarding "EBJ – BEP PAYMENT" attempting to "confirm . . . that Mr. Bronfman wishes to receive this payment immediately . . . ." Bronfman elected to take the payment in monthly installments, rather than a lump sum.

**Bronfman's Reliance on Vivendi's Representations**

22.    Bronfman has paid employment taxes on the full present value of his pension. If his pension is reduced, he will have to seek to recover the excess taxes from the IRS.

23.    Bronfman's decision to "opt-out" of his Employment Agreement before the end of his four-year term was based, in part, on the amount of the pension that Vivendi represented he would receive if he retired at that time.

24.    Bronfman signed a Consulting Agreement with Vivendi in February 2002. In negotiating the amount of compensation to be paid under the Consulting Agreement, Bronfman considered and relied upon the amount of the pension

- 8 -

that he was already receiving from Vivendi.  Had Bronfman instead been receiving a smaller pension, he likely would have negotiated for greater compensation.

25.    Bronfman signed a two-year Employment Agreement with Vivendi in September 2002  (the "Second Employment Agreement").  In negotiating the amount of compensation to be paid under the Second Employment Agreement, Bronfman considered and relied upon the amount of the pension that he was already receiving from Vivendi.  Had Bronfman instead been receiving a smaller pension, he likely would have negotiated for greater compensation.

26.    The Second Employment Agreement stated that Bronfman would "not accrue any benefits under the Company's Benefit Equalization Plan in addition to those he was entitled to receive as of the first day of the Employment Term."  Had Bronfman not already reached the maximum of 35 years of total service under the BEP, he would not have agreed to this limitation.

**Vivendi Discovers the "Mistake"**

27.    Vivendi paid Bronfman a pension reflecting his entitlement to the full BEP benefit from 2002 until 2006, when it claims it discovered the "mistake."

28.    Since May 2006, Vivendi has been paying Bronfman a reduced pension that does not take into account any Additional Service under the BEP.

**FIRST CAUSE OF ACTION:  BREACH OF CONTRACT AGAINST THE BEP
AND VIVENDI'S HUMAN RESOURCES COMMITTEE
(ERISA §§ 502(a)(1)(B), 502(a)(3))**

29.    Bronfman repeats and re-alleges the allegations in the previous paragraphs as if fully set forth herein.

- 9 -

30.     As stated more fully in ¶¶ 17-20, the Termination Protection Agreement, the Employment Agreement and the Termination Agreement each require Vivendi to pay Bronfman a pension that reflects the full BEP benefit, including the Additional Service.

31.     Vivendi has ceased paying Bronfman the full BEP benefit and has therefore breached the Termination Protection Agreement, the Employment Agreement, and the Termination Agreement.  Vivendi has also violated the terms of the BEP, which calls for pension benefits to reflect Additional Service where, as here, Vivendi has granted the participant the Additional Service.

32.     Bronfman is therefore entitled to declaratory relief, injunctive relief and damages, as set forth below.

## SECOND CAUSE OF ACTION:  ACCOUNT STATED AGAINST THE BEP AND VIVENDI'S HUMAN RESOURCES COMMITTEE (ERISA §§ 502(a)(1)(B), 502(a)(3))

33.     Bronfman repeats and re-alleges the allegations in the previous paragraphs as if fully set forth herein.

34.     As set forth more fully in ¶ 21, Vivendi repeatedly made statements and representations regarding the amount owed to Bronfman under its pension plans.

35.     Vivendi failed to correct those statements and representations within a reasonable amount of time, and they are therefore deemed to be "accounts stated," which are binding upon Vivendi.

36.     Bronfman is therefore entitled to declaratory relief, injunctive relief and damages, as set forth below.

- 10 -

### THIRD CAUSE OF ACTION:  EQUITABLE ESTOPPEL AGAINST THE BEP AND VIVENDI'S HUMAN RESOURCES COMMITTEE
### (ERISA §§ 502(a)(1)(B), 502(a)(3))

37.     Bronfman repeats and re-alleges the allegations in the previous paragraphs as if fully set forth herein.

38.     As set forth more fully in ¶ 21, Vivendi repeatedly made statements and representations regarding the amount owed to Bronfman under its pension plans.

39.     Those statements and representations were material.

40.     As set forth more fully in ¶¶ 22-26, Bronfman relied on those statements and representations, and has suffered damages as a result.

41.     Bronfman is therefore entitled to declaratory relief, injunctive relief and damages, as set forth below.

### FOURTH CAUSE OF ACTION: BREACH OF CONTRACT AGAINST VIVENDI
### (NEW YORK COMMON LAW)

42.     As set forth more fully in ¶¶ 29-31, Vivendi is in breach of contracts with Bronfman, who is therefore entitled to the relief set forth below.

### FIFTH CAUSE OF ACTION:  ACCOUNT STATED AGAINST VIVENDI
### (NEW YORK COMMON LAW)

43.     As set forth more fully in ¶¶ 33-35, Vivendi's representations to Bronfman constitute a final and binding account stated, entitling Bronfman to the relief set forth below.

- 11 -

## SIXTH CAUSE OF ACTION:  EQUITABLE ESTOPPEL AGAINST VIVENDI
## (NEW YORK COMMON LAW)

44.     As set forth more fully in ¶¶ 36-40, Vivendi is equitably estopped from denying the full BEP pension benefit to Bronfman, who is thereby entitled to the relief set forth below.

WHEREFORE, Bronfman prays that the Court grant him the following relief:

(a)     A judicial declaration that Bronfman is entitled to 15 years of Additional Service under the BEP for purposes of his pension calculation;

(b)     An injunction ordering Vivendi to pay Bronfman a pension reflecting 15 years of Additional Service under the BEP; and/or

(c)     Damages equal to the full present value of Bronfman's pension, prejudgment interest and any other damages the Court deems just and proper.

Dated:  April 10, 2007
        New York, New York

Respectfully submitted,

By: _____

Gandolfo V. DiBlasi (GD-5931)
Charles A. Michael (CM-0303)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Edgar Bronfman, Jr.*

- 12 -