## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

EDGAR BRONFMAN, JR.,

                    Plaintiff,

    —against—

VIVENDI HOLDING I CORPORATION,
THE BENEFIT EQUALIZATION PLAN OF
VIVENDI, S.A., and THE HUMAN
RESOURCES COMMITTEE OF THE
BOARD OF DIRECTORS OF VIVENDI,
S.A., as administrator of the BENEFIT
EQUALIZATION PLAN,

                  Defendants.

07 Civ. 2875 (GBD)

## EDGAR BRONFMAN, JR.'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Gandolfo V. DiBlasi (GD-5931)
Charles A. Michael (CM-0303)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Edgar Bronfman, Jr.*

New York, New York
June 13, 2007

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .................................................................................................2

DISCUSSION ....................................................................................................4

    I.     THIS COURT HAS JURISDICTION OVER THE HUMAN RESOURCES COMMITTEE AS AN ENTITY. .................................................4

          A.    The Human Resources Committee Was Properly Served as an Entity. ... 5

          B.    Jurisdiction Over the Human Resources Committee as an Entity is Consistent with Due Process..................................................... 7

    II.    BRONFMAN'S STATE LAW CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEY ARE PLED ONLY AS ALTERNATIVES TO HIS ERISA CLAIMS. ....................................................10

    III.   BRONFMAN'S ERISA § 502(a)(3) CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEY ARE PLED ONLY AS ALTERNATIVES TO BRONFMAN'S ERISA § 502(a)(1) CLAIMS. .............12

    IV.   BRONFMAN HAS ADEQUATELY ALLEGED A CLAIM FOR AN ACCOUNT STATED UNDER NEW YORK LAW AND ERISA. ...................13

          A.    Bronfman's Complaint Adequately Pleads an Account Stated Claim Under New York Law........................................................ 14

          B.    Bronfman's Complaint Adequately Pleads an Account Stated Claim Under ERISA. ...................................................... 17

    V.    BRONFMAN HAS ADEQUATELY ALLEGED AN EQUITABLE ESTOPPEL CLAIM UNDER NEW YORK LAW AND ERISA.....................18

          A.    Bronfman Has Adequately Alleged an Equitable Estoppel Claim Under ERISA. ...................................................... 18

          B.    Bronfman Has Adequately Alleged an Equitable Estoppel Claim Under New York Common Law....................................................... 21

CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Life Insurance Co.* v. *Borges*,
   869 F.2d 142 (2d Cir. 1989)..........................................................................................11

*Aiena* v. *Olsen*,
   69 F. Supp. 2d 521 (S.D.N.Y. 1999)..............................................................................10

*American Medical Association* v. *United Healthcare Corp*.,
   No. 00 Civ. 2800 (LMM), 2002 WL 31413668 (S.D.N.Y. Oct. 23, 2002) ....................13

*Allaire Corp.* v. *Okumus*,
   433 F.3d 248 (2d Cir. 2006)...........................................................................................14

*Ally & Gargano, Inc.* v. *Comprehensive Accounting Corp*.,
   615 F. Supp. 426 (S.D.N.Y. 1985).................................................................................15

*Aluminal Industrial, Inc.* v. *Newtown Commercial Associates*,
   89 F.R.D. 326 (S.D.N.Y. 1980) .......................................................................................8

*American Institute of Certified Public Accountants* v. *Affinity Card, Inc.*,
   8 F. Supp. 2d 372 (S.D.N.Y. 1998).................................................................................6

*Aquilio* v. *Police Benevolent Association of New York State Troopers, Inc.*,
   857 F. Supp. 190 (N.D.N.Y. 1994).................................................................................19

*Aramony* v. *United Way Replacement Benefit Plan*,
   191 F.3d 140 (2d Cir. 1999)...........................................................................................20

*Aronoff* v. *Service Employees Local 32-BJ AFL-CIO*,
   No. 02 Civ. 5386 (LMM) 2003 WL 1900832 (S.D.N.Y. Apr. 16, 2003).........................5

*Burger King Corp.* v. *Rudzewicz*,
   471 U.S. 462 (1985).........................................................................................................9

*Burnham* v. *Louis Meyers & Son*,
   172 F.2d 84 (2d Cir. 1949).............................................................................................15

*Burnham* v. *Superior Court of California*,
   495 U.S. 604 (1990).........................................................................................................8

*Cerasoli* v. *Xomed, Inc.*,
   972 F. Supp. 175 (W.D.N.Y. 1997) ...............................................................................20

*Chapman* v. *ChoiceCare Long Island Disability Plan*,
   288 F.3d 506 (2d Cir. 2002).............................................................................................5

*City of Lawrenceville* v. *Ricoh Electronics, Inc.*,
　　No. 05-1191, 2006 WL 839074 (11th Cir. Mar. 31, 2006)........................................14, 15

*Chapro* v. *SSR Realty Advisors, Inc. Severance Plan*,
　　351 F. Supp. 2d 152 (S.D.N.Y. 2004)...........................................................................13

*Coleman* v. *Standard Life Insurance Co.*,
　　288 F. Supp. 2d 1116 (E.D.N.Y. 2003) ........................................................................11

*Columbia Broadcasting System, Inc.* v. *Stokely-Van Camp, Inc.*,
　　522 F.2d 369 (2d Cir. 1975)..........................................................................................22

*DePace* v. *Matsushita Electric Corp. of America*,
　　257 F. Supp. 2d 543 (E.D.N.Y. 2003) ...................................................................20, 21

*DeGuiseppe* v. *Vertis, Inc.*,
　　No. 04-4348, 2005 WL 2271865 (E.D. Pa. Sept. 15, 2003) ...........................................13

*Devlin* v. *Empire Blue Cross*,
　　274 F.3d 76 (2d Cir. 2001)............................................................................................13

*Dittman* v. *Dyno Nobel, Inc.*,
　　No. 97-CV-1724, 1998 WL 865603, at *5 (N.D.N.Y. Nov. 24, 1998) ............................9

*Donaldson* v. *Pharmacia Pension Plan*,
　　435 F. Supp. 2d 853 (S.D. Ill. 2006)............................................................................13

*Elgie & Co.* v. *S. S. S. A. Nederburg*,
　　599 F.2d 1177 (2d Cir. 1979)........................................................................................22

*Estates of Ungar ex rel. Strachman* v. *Palestinian Authority*,
　　304 F. Supp. 2d 232 (D.R.I. 2004).................................................................................6

*Feifer* v. *Prudential Insurance Co.*,
　　306 F.3d 1202 (2d Cir. 2002)........................................................................................17

*First America Corp.* v. *Price Waterhouse LLP*,
　　154 F.3d 16 (2d Cir. 1998)..............................................................................................8

*Gittes* v. *GMIS, Inc.*,
　　No. 95 Civ. 2296 (BSJ), 1999 WL 500144 (S.D.N.Y. July 15, 1999) ...........................16

*Great-West Life & Annuity Insurance Co.* v. *Knudson*,
　　534 U.S. 204 (2002).................................................................................................12, 17

*Green* v. *First Reliance Standard Life Ins. Co.*,
　　No. 96 CIV. 6859 (PKL), 1997 WL 249967 (S.D.N.Y. May 12, 1997) ..................19, 20

*GSGSB, Inc.* v. *New York Yankees,*
   862 F. Supp. 1160 (S.D.N.Y. 1994)..................................................................................17

*Harrison* v. *Metropolitan Life Insurance Co.,*
   417 F. Supp. 424 (S.D.N.Y. 2004)....................................................................................11

*International Shoe Co.* v. *Washington,*
   326 U.S. 310 (1945).............................................................................................................7

*Kadic* v. *Karadzic,*
   70  F.3d 232 (2d Cir. 1995)..................................................................................................7

*Kaliebe* v. *Parmalat USA Corp.,*
   No. 02 C 8934, 2003 WL 22282379 (N.D. Ill. Sept. 30, 2003).......................................21

*Kiley* v. *AchieveGlobal, Inc.,*
   No. 3:05-CV-1658 (RNC), 2006 WL 2475248 (D. Conn. Aug. 24, 2006) ......................9

*Launer* v. *Buena Vista Winery, Inc.,*
   916 F. Supp. 204 (E.D.N.Y. 1996) ...................................................................................10

*LeBoeuf, Lamb, Greene & MacRae, L.L.P.* v. *Worsham,*
   185 F.3d 61 (2d Cir. 1999)................................................................................................14

*Lee* v. *Burkhart,*
   991 F.2d 1004 (2d Cir. 1993)............................................................................................18

*Local 8A-28A Welfare & 401(K) Retirement Funds* v. *Golden Eagles Architectural Metal,*
   277 F. Supp. 2d 291 (S.D.N.Y. 2003)................................................................................7

*Marks* v. *Newcourt Credit Group, Inc.,*
   342 F.3d 444 (6th Cir. 2003) ............................................................................................12

*Mead* v. *Andersen,*
   309 F. Supp. 2d 596 (S.D.N.Y. 2004)...............................................................................13

*Mertens v. Hewitt Associates,*
   508 U.S. 248 (1993)...........................................................................................................17

*Northern Light Technologies, Inc.* v. *Northern Lights Club,*
   236 F.3d 57 (1st Cir. 2001)................................................................................................8

*In re Natural Gas Commodity Litigation,*
   337 F. Supp. 2d 498 (S.D.N.Y. 2004)..........................................................................14, 18

*Navimex S.A. De C.V.* v. *S/S N. Ice,*
   617 F. Supp. 103 (S.D.N.Y. 1984)....................................................................................14

*Pell* v. *DuPont*,
    No. CIV A 01-21, 2006 WL 2864604 (D. Del. Oct. 6, 2006) ........................................20

*Pilot Life Insurance Co.* v. *Dedeaux*,
    481 U.S. 41 (4th Cir. 1989) ...............................................................................11, 20

*Pizlo* v. *Bethlehem Steel Corp.*,
    884 F.2d 116 (4th Cir. 1989) ......................................................................................12

*In re Rockefeller Center Properties*,
    46 Fed. Appx. 40 (2d Cir. 2002) ................................................................................15

*In re Rockefeller Center Properties*,
    241 B.R. 804 (Bankr. S.D.N.Y. 1999) .......................................................................14

*Traffix, Inc.* v. *Herold*,
    269 F. Supp. 2d 223 (S.D.N.Y. 2003)..........................................................................7

*United States* v. *Smith Road Construction Co.*,
    227 F. Supp. 315 (N.D. Okla. 1964) ..........................................................................15

*University of Mass. Medical Center* v. *C&M Corp.*,
    16 F. Supp. 2d 110 (D. Mass. 1998) .............................................................................8

*Varsic* v. *United States District Court*,
    607 F.2d 245 (9th Cir. 1979) ......................................................................................10

*Ventimiglia* v. *Gruntal & Co., Inc.*,
    No. 88 Civ. 1675 (RJW), 1989 WL 251402 (S.D.N.Y. Nov. 1, 1989)...........................11

*World-Wide Volkswagen Corp.* v. *Woodson*,
    444 U.S. 286 (1980)......................................................................................................9

**STATE CASES**

*Grinnell* v. *Ultimate Realty LLC*,
    832 N.Y.S.2d 244 (N.Y. App. Div. 2d Dep't 2007) .......................................................16

*Martin H. Bauman Associates, Inc.* v. *H&M International Transport, Inc.*,
    567 N.Y.S.2d 404 (N.Y. App. Div. 1st Dep't 1991) .......................................................16

*Rodkinson* v. *Haecker*,
    162 N.E. 493 (N.Y. 1928)......................................................................................14, 17

*Rothschild* v. *Title Guarantee & Trust Co.*,
    97 N.E. 879 (N.Y. 1912)..............................................................................................21

*Sea Modes, Inc.* v. *Cohen*,
    127 N.E.2d 723 (N.Y. 1955)......................................................................18

## FEDERAL STATUTES AND RULES

29 U.S.C. § 1002.....................................................................................................5

29 U.S.C. § 1132............................................................................................ *passim*

FED. R. CIV. P. 4 ..............................................................................................5, 6, 7

FED. R. CIV. P. 8 .............................................................................................. *passim*

## OTHER AUTHORITIES

AM. JUR. 2D ACCOUNTS AND ACCOUNTING (2005). ................................................15

SARAH HOWARD JENKINS, CORBIN ON CONTRACTS (Rev. ed. 2003) ..........................17

RESTATEMENT (SECOND) OF CONTRACTS .................................................................17

MARCIA BETH STAIRMAN WAGNER, ET AL., ERISA — LITIGATION, PROCEDURE PREEMPTION
    AND OTHER TITLE I ISSUES (2006) ....................................................................5

WILLISTON ON CONTRACTS (4th ed. 2003) ........................................................17, 18

Plaintiff Edgar Bronfman, Jr. ("Bronfman") respectfully submits this memorandum in opposition to the motion of Vivendi Holding I Corporation ("Vivendi Holding"), the Benefit Equalization Plan of Vivendi, S.A. (the "BEP"), and the Human Resources Committee of the Board of Directors of Vivendi S.A. (the "Human Resources Committee" or the "Committee") (collectively, "Defendants") to dismiss the complaint.

## PRELIMINARY STATEMENT

Bronfman was the CEO of Seagram Company Ltd. ("Seagram") when it merged into Vivendi S.A. ("Vivendi") in 2000. Bronfman, who became Executive Vice Chairman of the merged company, began drawing a pension from Vivendi in 2002, reflecting his 20 years of work with Seagram and Vivendi. In 2006, Vivendi reduced Bronfman's pension payments by approximately 65 percent upon discovering an alleged "mistake" in the calculation. Vivendi claimed that it had been erroneously crediting Bronfman for 15 years of "Additional Service" under an employee benefit plan called the Benefit Equalization Plan (the "BEP"), which is administered by Vivendi's Human Resources Committee. The Additional Service at issue was expressly granted by three separate contracts, and Defendants repeatedly made representations to Bronfman (both before and after his resignation) reflecting the Additional Service.

Bronfman now seeks to recover the pension payments to which he is entitled, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. and New York common law. On May 8, 2007, Vivendi moved to dismiss Bronfman's complaint based on various jurisdictional and substantive theories. By joint stipulation, Defendants and Bronfman narrowed the scope of the jurisdictional issues and substituted Vivendi Holding, the Vivendi subsidiary that would ultimately be responsible for any judgment,

as a defendant in place of Vivendi.  (Ex. 1.)[1]  Defendants filed a renewed motion to dismiss on

May 30, 2007, which incorporated the following arguments from their prior briefing:  (1) that

this Court lacks jurisdiction over the Human Resources Committee; (2) that Bronfman's ERISA

§ 502(a)(1) claims preclude his claims under state law and his claims under ERISA's "catch-

all" § 502(a)(3); and (3) that Bronfman has failed to state claims for account stated and

equitable estoppel.  None of these arguments has merit.

First, Bronfman's agent made personal service on a Human Resources

Committee member while she was physically present in New York City, thereby establishing

personal jurisdiction over the Human Resources Committee.  Alternatively, the conduct that

underlies this lawsuit was plainly directed at Bronfman while he was living and working in the

United States, thereby making the assertion of jurisdiction over the Committee appropriate.

Second, Bronfman's common law claims and § 502(a)(3) claims are alleged as

alternatives to Bronfman's ERISA § 502(a)(1) claims, and Rule 8 explicitly allows for

alternative pleading in this manner.

Finally, Bronfman's allegations easily meet the liberal Rule 8 notice pleading

standard for claims based on equitable estoppel and account stated because Bronfman's

allegations describe in detail Defendants' long-standing representations regarding the amount of

Bronfman's pension, as well as his detrimental reliance upon those representations.

## BACKGROUND

Bronfman began working at Seagram in 1982 and eventually rose to become

CEO.  (Compl. ¶¶ 4, 19.)  In 2000, Seagram and Vivendi merged and Bronfman became

---

[1] Citations in the form "Ex. __" refer to the attached declaration of Charles A. Michael.
Citations in the Form "__ Aff." refer to the affidavits submitted with Defendants' initial motion
to dismiss.

Executive Vice Chairman of the merged company until his retirement in March 2002.  (Compl. ¶ 4.)  Bronfman was reemployed by Vivendi from September 2002 until December 2003. (Compl. ¶ 4.)

At all relevant times, Seagram and Vivendi offered a pension plan—the BEP—that supplemented the regular, "tax-qualified" pension plan and allowed participants to earn one year of Additional Service for each year of actual service, with a maximum total, in most cases, of 35 years of service.  (Compl. ¶¶ 14-15.)  This Additional Service was automatically given to BEP participants who met certain age and service requirements, but the BEP specifically allowed Vivendi to award it to other participants, such as Bronfman.  (Compl. ¶ 14.)

In 2000, in anticipation of the merger with Vivendi, Bronfman and Seagram entered into a Termination Protection Agreement, under which Bronfman would receive certain payments and benefits if he were terminated without good cause or if he resigned for certain good reasons.  (Compl. ¶ 17.)  Included in those payments and benefits was Bronfman's right to "become fully vested in any unfunded pension benefit provided in any nonqualified pension plan . . . including, without limitation, the Benefit Equalization Plan."  (Compl. ¶ 17.)  After the merger closed, Bronfman entered into a four-year Employment Agreement with Vivendi, under which he could "opt-out" after the first year and still receive the payments and benefits offered under the Termination Protection Agreement—including becoming "fully vested" in the BEP. (Compl. ¶ 18.)  Bronfman exercised his opt-out rights, and entered into a Termination Agreement which once again reflected his right to become "fully vested" in the BEP. (Compl. ¶ 19.)  At the time of his retirement date, he had accrued 20 years of actual service and 15 years of Additional Service under the BEP, for a total of 35 years.  (Compl. ¶ 20.)

In the course of negotiating his separation, and shortly thereafter, Vivendi repeatedly made unequivocal statements that Bronfman would receive the full 35 years of service credit. (Compl. ¶ 21.) Those representations influenced Bronfman's (i) decision to resign, (ii) subsequent negotiations with Vivendi regarding the terms of his re-employment, and (iii) tax planning. (Compl. ¶¶ 22-26, 41.)

Vivendi paid Bronfman his full pension, appropriately reflecting 35 years of service, from 2002 until 2006, when it claimed it had discovered a "mistake" and that he should not have been given any Additional Service. (Compl. ¶¶ 27-28.)

## DISCUSSION

I.    THIS COURT HAS JURISDICTION OVER THE HUMAN RESOURCES
      COMMITTEE AS AN ENTITY.

By the terms of the parties' joint stipulation, this Court has personal jurisdiction over (i) Vivendi Holding, the Vivendi subsidiary that ultimately would be responsible for any judgment in this action, (ii) the BEP itself, which, as an "employee benefit plan," may be sued under ERISA, 19 U.S.C. § 1132(d), and (iii) Sarah Frank, the Human Resources Committee member who was physically served with the summons and complaint. (Ex. 1 ¶ 3.) However, Vivendi maintains that the Court lacks jurisdiction over the Human Resources Committee as an entity. (Def. Mem. at 6-7.) This is incorrect: Rule 4 and ERISA explicitly contemplate service of process upon the Committee as an entity, and that service alone is sufficient to establish jurisdiction. Alternatively, the conduct that underlies this lawsuit was plainly directed at Bronfman while he was living and working in the United States, thereby making the assertion of jurisdiction against the Committee appropriate.

A.    <u>The Human Resources Committee Was Properly Served as an Entity.</u>

Defendants contend that the Human Resources Committee may not be served "as a single entity" because, under French law, it "has no legal personality." (Def. Mem. at 4.) According to Defendants, the Court would only have personal jurisdiction over the Committee as a whole if Bronfman had served all of the "other individual members of the Committee," who "reside in Europe." (Def. Mem. at 4.) Not surprisingly, Defendants cite no authority (and we could find none) for the proposition that a plaintiff wishing to bring claims against an unincorporated entity such as the Human Resources Committee must first locate and serve each and every one of its members.

ERISA allows a plan beneficiary to recover against the plan itself (*i.e.*, the BEP) as well as the plan's "administrator," *see Chapman* v. *ChoiceCare Long Island Disability Plan*, 288 F.3d 506, 510 (2002), which Defendants identify as the Human Resources Committee itself—not the individual members. (Ford Aff. ¶ 13.) ERISA defines the term "administrator" in terms of "person[s]," which is further defined to include "unincorporated organization[s]" and "associations" such as the Human Resources Committee. 29 U.S.C. §§ 1002(9), 1002(16)(A)(i). Similarly, Rule 4(h) of the Federal Rules of Civil Procedure (under which Frank was served) allows for service upon "unincorporated associations." FED. R. CIV. P. 4(h).[2] Thus, whether or not the Human Resources Committee has a "legal personality" in France is irrelevant, because ERISA and Rule 4 recognize such entities and the fact that they may be served and sued as such.

---

[2] In ERISA cases, service may be accomplished by the methods set forth in the statute itself, or by complying with Rule 4. *See Aronoff* v. *Service Employees Local 32-BJ AFL-CIO,* No. 02 Civ. 5386 (LMM), 2003 WL 1900832, at *1 (S.D.N.Y. Apr. 16, 2003); MARCIA BETH STAIRMAN WAGNER, ET AL., ERISA — LITIGATION, PROCEDURE PREEMPTION AND OTHER TITLE I ISSUES § II.D.2.a, at A-10 (2006).

The Committee was properly served as an "unincorporated association" under Rule 4(h) in at least two ways.  First, Frank was personally served at her home at 300 Central Park West under Rule 4(h)(1), which allows for personal service upon "an officer, a managing or general agent or . . . any other agent authorized by law to receive service.,"  FED. R. CIV. P. 4(h).  (Ex. 2.)  This provision "does not require that service be made solely on a restricted class of formally titled officials, but rather permits it to be made upon a representative so integrated with the organization that he will know what to do with the papers." *Am. Institute of Certified Public Accountants* v. *Affinity Card, Inc.*, 8 F. Supp. 2d 372, 376 (S.D.N.Y. 1998).  In other words, service is proper under 4(h) when it is "made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive services." *Id.*

In this case, Frank is one of only five members of the Human Resources Committee, and according to her biography in Vivendi's SEC filings, she spent seven years as "chairman and Chief Executive Officer of BBC Worldwide Americas," and was "Vice President and Director of Education at Thirteen/WNET New York."  (Ex. 3, at 91.)  She was once named by USA Today as "one of the 25 most influential people in American television." (Ex. 3, at 91.)  Frank is plainly a sophisticated individual who no doubt "kn[e]w what to do" when she was served, *Affinity Card*, 8 F. Supp. 2d at 376, and it is therefore fair and reasonable to imply authority for Frank to receive service on the Committee's behalf.  *See e.g., In Estates of Ungar ex rel. Strachman* v. *Palestinian Auth.,* 304 F. Supp. 2d 232, 258-59 (D.R.I. 2004) (finding service proper as to Hamas, a terrorist organization with no legal identity, where the head of its military operations was personally served a copy of the summons and complaint at his home in Illinois).

- 6 -

Second, the Clerk of Court sent copies of the summons and complaint, addressed to the Human Resources Committee, to Vivendi's corporate headquarters in France, under Rule 4(f). (Ex. 4.) *See* FED. R. CIV. P. 4(f)(2)(C)(ii). Rule 4(h) allows for service outside the United States "in any manner prescribed for individuals by subdivision (f)." FED. R. CIV. P. 4(h). Accordingly, Rule 4 by its terms allows for service upon an unincorporated association in precisely the manner the Human Resources Committee was served in this instance.

B.    Jurisdiction Over the Human Resources Committee as an Entity is Consistent with Due Process.

Whether a federal court may assert personal jurisdiction over an ERISA defendant is analyzed under the familiar "minimum contacts" standards of *International Shoe Co*. v. *Washington*, 326 U.S. 310, 316 (1945) and its progeny, except the contacts are analyzed with respect to the United States as a whole, instead of a particular state. *See Local 8A-28A Welfare & 401(K) Ret. Funds* v. *Golden Eagles Architectural Metal*, 277 F. Supp. 2d 291, 294 (S.D.N.Y. 2003) (collecting cases). To defeat a motion to dismiss for lack of jurisdiction, the complaint and affidavits need only "contain sufficient allegations to establish a *prima facie* showing of jurisdiction," and "the court must assume the truth" of those allegations. *Traffix, Inc*. v. *Herold*, 269 F. Supp. 2d 223, 226 (S.D.N.Y. 2003). Bronfman has made this *prima facie* showing on two independent bases.

First, it is well established that "tagging"—"the practice of serving defendants who are only transitorily present in the forum"—is sufficient to establish personal jurisdiction, even "when the defendant's presence in the state is fortuitous or under circumstances in which the minimum contacts test would not be satisfied." 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.3 (2006); *see also Kadic* v. *Karadzic*, 70 F.3d 232, 246-47 (2d Cir. 1995) (upholding exercise of personal jurisdiction over foreign

national served with summons while physically present in the forum).  As the Supreme Court

has explained, "jurisdiction based on physical presence alone constitutes due process because it

is one of the continuing traditions of our legal system that define the due process standard."

*Burnham* v. *Superior Court of California*, 495 U.S. 604, 619 (1990) (plurality).

   As applied to corporations, associations or other entities who can only act

through their agents, this form of "tag" jurisdiction is satisfied so long as an agent of the entity

is served while physically present in the forum.  *See First Am. Corp*. v. *Price Waterhouse LLP*,

154 F.3d 16, 20-21 (2d Cir. 1998) (upholding personal jurisdiction over a UK partnership

where a partner was served while physically present in New York); *see also N. Light Tech., Inc*.

v. *N. Lights Club*, 236 F.3d 57, 61-64 (1st Cir. 2001) (upholding jurisdiction over Canadian

corporation where its president was served in the forum); *Aluminal Indus., Inc*. v. *Newtown*

*Comm'l Assocs*., 89 F.R.D. 326, 329 (S.D.N.Y. 1980) (upholding jurisdiction over foreign

partnership where managing partner was served while temporarily present at a New York

airport).  In this case, a member of the Human Resources Committee was served while

physically present in this District (Ex. 2), and the long-established rule of "tag" jurisdiction

thereby establishes personal jurisdiction over the Committee.  *See, e.g., Univ. of Mass. Med.*

*Center* v. *C&M Corp*., 16 F. Supp. 2d 110, 111-12 (D. Mass. 1998) (holding, in ERISA action,

that "[b]y virtue of the fact that [the defendant] was lawfully served within the United States,

 . . . this Court has personal jurisdiction over [the defendant]").

   Second, despite Defendants' claim that the complaint contains only a "bare" and

"conclusory" allegation of jurisdiction (Def. Mem. at 6), Bronfman's allegations demonstrate

that the Committee has "purposefully directed" the conduct underlying this lawsuit at a

"resident[] of the forum" (*i.e.*, Bronfman) and thus the Committee  "'should reasonably

anticipate being haled into court'" here in the United States.  *See Burger King Corp*. v. *Rudzewicz*, 471 U.S. 462, 472-74 (1985) (quoting *World-Wide Volkswagen Corp*. v. *Woodson*, 444 U.S. 286, 297 (1980)).  Specifically, the complaint alleges that the Committee administers the BEP, under which Bronfman, a New York resident, accrued pension credit for 20 years.  (Compl. ¶¶ 2, 4, 7, 20, 26, 27.)   The complaint further alleges that the wrongful decision of Defendants (including the Committee) to reduce Bronfman's pension in breach of several agreements "took place" here in this District.  (Compl. ¶ 10.)  In fact, Defendants submitted an affidavit containing a copy of one of those agreements, which makes it abundantly clear that Bronfman was working and living in the United States at the time these agreements were executed.  (Bigge Aff. Ex. B, §§ 6(a), (d), at 5 (describing Bronfman's "residence in New York City" and "office at 375 Park Avenue, New York, New York.").)

In light of these facts, the Human Resources Committee cannot seriously dispute that it is subject to the jurisdiction of United States courts.  Several courts in this Circuit have found personal jurisdiction over defendants in ERISA actions based upon conduct similar to that alleged here, and this Court should join those decisions in upholding jurisdiction in this case.  *See Kiley* v. *AchieveGlobal, Inc*., No. 3:05-CV-1658 (RNC), 2006 WL 2475248, at * 2 (D. Conn. Aug. 24, 2006) (holding that, because plaintiff "regularly performed work" in the forum and "earned credit toward severance benefits" in the forum, defendant "'should [have] reasonably anticipate[d] being haled into court [there]'") (citation omitted); *Dittman* v. *Dyno Nobel, Inc.*, No. 97-CV-1724, 1998 WL 865603, at *5 (N.D.N.Y. Nov. 24, 1998) ("Defendants also administer the Pension Plan to participants in the Northern District and accept contributions to the Pension Plan from these participants.  Plaintiff, in fact, earned pension credit at the plant. Thus, defendants could surely have anticipated being haled into this district

- 9 -

on the very type of claim brought here."); *Launer* v. *Buena Vista Winery, Inc.*, 916 F. Supp.

204, 212 (E.D.N.Y. 1996) (holding  ERISA claims may proceed "in the district where an

employee performs his work and earns his pension credits"); *see also Varsic* v. *United States*

*District Court*, 607 F.2d 245, 250 (9th Cir. 1979) (holding that the decision "to undertake the

fiduciary duty of receiving contributions and making payments based upon work performed

[within a jurisdiction], is sufficient to support in personam jurisdiction in that forum").

II.     BRONFMAN'S STATE LAW CLAIMS SHOULD NOT BE DISMISSED BECAUSE
        THEY ARE PLED ONLY AS ALTERNATIVES TO HIS ERISA CLAIMS.

        Defendants correctly state that ERISA broadly preempts related state law claims,

but then wrongly conclude that Bronfman's state law claims, which are pled only as

*alternatives* to his ERISA claims, should be immediately dismissed, even before there is any

judicial determination as to the applicability of ERISA.  (Def. Mem. at 8-10.)

        Bronfman does not dispute that, if the Court determines that the BEP is an

ERISA employee benefit plan and that his state law claims "relate" to the BEP, then ERISA

exclusively governs his claims.  If a contrary determination is made, then of course Bronfman's

state law claims would remain viable.  But that determination has not been made one way or the

other, and Rule 8(e)(2) explicitly allows for pleading in the alternative.  FED. R. CIV. P. 8(e)(2).

There is nothing in ERISA purporting to overrule or otherwise exempt ERISA claims from

Rule 8's allowance for alternative pleading.

        As Judge Kaplan explained:  "[I]t would be foolish to put all of one's eggs in

either the ERISA or the state law basket," because "[r]esting solely on ERISA would run the

risk that a court ultimately would determine that there was no ERISA plan" and "[r]esting

solely on the state law theory would run the risk that a court would conclude that there was an

ERISA plan and that the state claims were preempted."  *Aiena* v. *Olsen*, 69 F. Supp. 2d 521,

- 10 -

531 (S.D.N.Y. 1999). "Rule 8(e)(2) permits such alternative pleading to avoid precisely such dilemmas." *Id.* (footnote omitted); *see also Coleman* v. *Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1119-22 (E.D. Cal. 2003) (allowing alternative pleading in ERISA case and noting that "[i]f courts routinely granted motions to dismiss under these circumstances, plaintiffs would be forced to hazard a guess as to whether their plan is properly covered by ERISA, and would suffer dismissal of their complaint if the guess turned out to be incorrect"); *Ventimiglia* v. *Gruntal & Co., Inc.*, No. 88 Civ. 1675 (RJW), 1989 WL 251402, at *3 (S.D.N.Y. Nov. 1, 1989) (refusing to "dismiss plaintiffs' state law claims of breach of contract and breach of fiduciary duty on [ERISA] preemption grounds" because "alternative pleading is specifically authorized by Rule 8(e)(2)").

The decision in *Harrison* v. *Metro. Life Ins. Co.*, 417 F. Supp. 424 (S.D.N.Y. 2004), which Defendants cite, is not to the contrary. (Def. Mem. at 8-9.) In that case, the parties submitted numerous affidavits and other materials from which the Court made the determination that the "Plan is governed by ERISA," and that the claims related to that plan. *Id.* at 430-32 & 430 n.1 (listing materials considered). Similarly in *Aetna Life Ins. Co.* v. *Borges*, 869 F.2d 142, 143 (2d Cir. 1989), also cited by Defendants, the parties stipulated to the fact that the plan was governed by ERISA. (Def. Mem. at 8-9.)

Whether Bronfman recovers on the basis of ERISA or state law, the basic issue presented—whether Mr. Bronfman is entitled to the years of Additional Service in dispute—centers around various employment contracts that assure him the benefits of the BEP. Accordingly, this lawsuit does not put Vivendi at risk of "conflicting or inconsistent . . . regulation" of the plan's terms, the avoidance of which is the purpose of ERISA preemption. *See Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 45-46 (1987) (citation omitted).

While Bronfman believes that ERISA is applicable to this dispute, the issue has not been decided by the Court, and is accordingly not free from doubt. *See Marks* v. *Newcourt Credit Group, Inc*., 342 F.3d 444, 448-49 (6th Cir. 2003) (holding state law claim not preempted because, even though the plaintiff sought "damages equaling the benefits he would have received under the plan," the "reference to plan benefits was only a way to articulate" his damages); *Pizlo* v. *Bethlehem Steel Corp*., 884 F.2d 116, 120-21 (4th Cir. 1989) (holding breach of contract claims not preempted merely because "[i]f the Plaintiffs prevail, the damages would be measured in part by the lost pension benefits the Plaintiffs would have received").

The Court need not decide these issues at the pleading stage, even before the BEP has been entered into the record. Instead, the Court should simply hold that Bronfman's ERISA and state law claims are properly pled in the alternative.

III. **BRONFMAN'S ERISA § 502(a)(3) CLAIMS SHOULD NOT BE DISMISSED BECAUSE THEY ARE PLED ONLY AS ALTERNATIVES TO BRONFMAN'S ERISA § 502(a)(1) CLAIMS.**

Defendants also err in urging the Court to dismiss Bronfman's § 502(a)(3) claims for "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Bronfman principally seeks to prosecute all of his ERISA claims under § 502(a)(1), under which he can recover the "benefits due to him" and "enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 29-41.) The broad language of § 502(a)(1) allows Bronfman to recover "without reference to whether the relief sought is legal or equitable." *Great-West Life & Annuity Ins. Co*. v. *Knudson*, 534 U.S. 204, 220-21 (2002).

However, should the Court determine that § 502(a)(1) is not applicable to any of his claims, Bronfman may preserve his right to seek "other appropriate equitable relief" under § 502(a)(3), "which act[s] as a safety net, offering appropriate equitable relief for injuries

caused by [ERISA] violations that § 502 does not elsewhere adequately remedy." *See Devlin* v. *Empire Blue Cross*, 274 F.3d 76, 89 (2d Cir. 2001) (alterations in original; citations omitted). Rule 8 explicitly allows Bronfman to plead in the alternative in this manner, and there is nothing in ERISA to the contrary. *See Chapro* v. *SSR Realty Advisors, Inc. Severance Plan*, 351 F. Supp. 2d 152, 155-156 (S.D.N.Y. 2004) (allowing plaintiff to assert both § 502(a)(1) and § 502(a)(3) claims at the motion to dismiss stage "so as to ensure all avenues of relief are available in the event that her § [502](a)(1) [claim] fails"); *Am. Med. Ass'n* v. *United Healthcare Corp.*, No. 00 Civ. 2800 (LMM), 2002 WL 31413668, at * 7 (S.D.N.Y. Oct. 23, 2002) ("At this point in the proceedings, plaintiffs are entitled to proceed under both ERISA theories."); *see also, e.g., Donaldson v. Pharmacia Pension Plan*, 435 F. Supp. 2d 853, 869 n.5 (S.D. Ill. 2006); *DeGuiseppe* v. *Vertis, Inc.*, No. 04-4348, 2005 WL 2271865, at *3 (E.D. Pa. Sept. 15, 2005).[3]

## IV.    BRONFMAN HAS ADEQUATELY ALLEGED A CLAIM FOR AN ACCOUNT STATED UNDER NEW YORK LAW AND ERISA.

Defendants claim that Bronfman's account stated claim should be dismissed because it does not state a cause of action under New York law, and because it is not cognizable as an ERISA claim.  (Def. Mem. at 10-12.)  Both points are incorrect.  Bronfman has pled facts demonstrating that this is a classic case of an account stated, and there is nothing in ERISA that would bar this ordinary contract principle from applying in this case.

---

[3] The decision in *Mead* v. *Andersen*, 309 F. Supp. 2d 596 (S.D.N.Y. 2004), which Defendants cite, does not address Rule 8, and is therefore inapposite.  The plaintiff in that case (who was *pro se*) apparently sought relief under both subsections concurrently and not, as is the case here, as alternative theories.  *Id.* at 599.

- 13 -

A.     Bronfman's Complaint Adequately Pleads an Account Stated Claim Under New
York Law.

In deciding a motion to dismiss, the Court must "accept[] as true the factual

allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Allaire Corp.* v.

*Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).  "The test for determining the sufficiency of a

complaint is not whether it recites all elements of an asserted claim, but rather whether the

document provides fair notice to the defendant of the claims against it and the grounds on

which those claims rest, thereby enabling the defendant to prepare an informed response." *In re*

*Natural Gas Commodity Litig*., 337 F. Supp. 2d 498, 508 (S.D.N.Y. 2004).  Bronfman has

easily met this standard.

An account stated is "nothing more or less than a contract express or implied

between the parties . . . regarding the amount due on past transactions." *Rodkinson* v. *Haecker*,

162 N.E. 493, 495 (N.Y. 1928); *see also Navimex S.A. De C.V.* v. *S/S N. Ice*, 617 F. Supp. 103,

105 (S.D.N.Y. 1984).  Accounts stated arise most commonly when one party issues a statement

of account and the "party receiving [the] statement of account keeps it without objecting to it

within a reasonable time."  *LeBoeuf, Lamb, Greene & MacRae, L.L.P.* v. *Worsham*, 185 F.3d

61, 64 (2d Cir. 1999) (citations omitted).  But the doctrine may also operate, as here, against the

party who issues an account statement when that party unreasonably fails to correct a supposed

error.  *See In re Rockefeller Center Props*., 241 B.R. 804, 819-821 (Bankr. S.D.N.Y. 1999)

(stating that account stated may be raised "to prevent the reopening" of an account), *aff'd,* 266

B.R. 52 (S.D.N.Y. 2001), *aff'd*, 46 Fed. Appx. 47 (2d Cir. 2002); *City of Lawrenceville* v. *Ricoh*

*Electronics, Inc.*, No. 05-1191, 2006 WL 839074, at *1-4 (11th Cir. Mar. 31, 2006) (deeming

bills issued by a natural gas provider, who had allegedly underbilled a customer by $1.5 million

over a six-and-one-half year period, to be an "account stated" and refusing to allow reopening

- 14 -

of the account).  This latter form of an account stated is sometimes called a "settled account."
*See United States* v. *Smith Road Constr. Co.*, 227 F. Supp. 315, 319 (N.D. Okla. 1964); 1 AM.
JUR. 2D ACCOUNTS AND ACCOUNTING § 27 (2005).

      Bronfman's pleadings represent the paradigm case of the "settled account."
Defendants issued several statements to Bronfman reflecting the amounts owing to him under
his pension plan, and for four years Bronfman accepted payments consistent with those
statements.  (Compl. ¶ 21, 33-36, 43.)  Defendants did not discover the supposed "error" until
after those four years of payments—an unreasonably long period of time.  (Compl. ¶¶ 27-28.)
The doctrine of account stated thus bars Defendants from reopening the pension calculation at
this late date.  *See, e.g., City of Lawrenceville*, 2006 WL 839074, at *1-4.

      Defendants nevertheless claim that Bronfman "has stretched the doctrine of
'account stated' beyond recognition" because he has not alleged the existence of anything, such
as a "credit card bill or a legal invoice," that represents an implicit or explicit agreement as to
the amount owed under Bronfman's pension.  (Def. Mem. at 10-11.)  This argument
misconstrues the law and the facts.  An account stated need not be based upon "bills" or
"invoices," *see, e.g., In re Rockefeller Center Props.*, 46 Fed. Appx. 40, 42 (2d Cir. 2002)
(escalation statement calculating increased rent to a tenant); *Burnham* v. *Louis Meyers & Son*,
172 F.2d 84 (2d Cir 1949) (statements of sales commissions to a salesman); *Sea Modes, Inc.* v.
*Cohen*, 127 N.E.2d 723, 734 (N.Y. 1955) (same), so long as the statements represent at least an
"implied" promise "to pay a stated sum of money."  *See Ally & Gargano, Inc.* v.
*Comprehensive Accounting Corp.*, 615 F. Supp. 426, 429 (S.D.N.Y. 1985).

      Bronfman's complaint expressly refers to at least six unequivocal statements—
including a "pension estimate" and a "pension summary"—reflecting his entitlement to the full

- 15 -

BEP benefit.  (Compl. ¶ 21.)  In alleging that these statements constitute an "account stated," Bronfman has plainly alleged that the parties understood them as representations as to the correct calculation of his pension.  (Compl. ¶¶ 34, 35, 43.)  Bronfman's identification of these specific documents and representations, coupled with additional allegations concerning the context in which they were made, makes it impossible to credibly contend that Bronfman failed to meet Rule 8's liberal pleading standard.

Defendants also claim that the doctrine of account stated "cannot be utilized simply as another means to attempt to collect under a disputed contract," suggesting that the mere existence of the underlying contracts bars the application of account stated in this case. (Def. Mem. at 11 (quoting *Grinnell* v. *Ultimate Realty, LLC*, 832 N.Y.S.2d 244 (N.Y. App. Div. 2d Dep't 2007).)  But the passage Defendants quote is merely another expression of the rule that an account stated "assumes the existence" of a pre-existing creditor-debtor relationship, and may not "create liability when none otherwise exists."  *See, e.g., Gittes* v. *GMIS, Inc.*, No. 95 Civ. 2296 (BSJ), 1999 WL 500144, at *7 (S.D.N.Y. July 15, 1999).

In *Grinnell* and other cases expressing this principle, the formation of a contractual relationship was "disputed."  *Grinnell*, 832 N.Y.S.2d at 245 (noting that "there was no evidence that the plaintiff had a contractual relationship with the defendant"); *see also*, *e.g*., *Martin H. Bauman Assocs., Inc*. v. *H&M Int'l Transp., Inc.*, 567 N.Y.S.2d 404, 408 (N.Y. App. Div. 1st Dep't 1991) (noting that, because "the existence of an underlying contract between the parties has not yet been established," a "claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract").  Here, by contrast, there is no disputing the *existence* of a contractual relationship between Bronfman and the Defendants; the only dispute is as to the *amount* Bronfman is owed under the various contracts and the BEP.

This is therefore precisely the type of situation in which the doctrine should apply. *See, e.g.,*
*GSGSB, Inc*. v. *New York Yankees*, 862 F. Supp. 1160, 1176 (S.D.N.Y. 1994) (account stated
"determines the amount of debt where a liability [already] exists").

      B.    Bronfman's Complaint Adequately Pleads an Account Stated Claim Under
            ERISA.

          Defendants erroneously contend that a claim for account stated is not a "proper
cause of action under ERISA." (Def. Mem. at 11-12.) In making this claim, Defendants have
raised arguments and cited cases only discussing the ability to obtain "other equitable relief"
under § 502(a)(3), apparently assuming that Bronfman's account stated claim falls under
§ 502(a)(3) only. (Def. Mem. at 11 (citing *Knudson*, 534 U.S. at 210 and *Mertens* v. *Hewitt
Assocs*., 508 U.S. 248, 256, (1993)). This is simply incorrect. Bronfman's complaint alleges a
claim for account stated under *both* §§ 502(a)(1) and (a)(3) (Compl. ¶¶ 33-36), and, as
discussed, *supra* pp. 12 – 13, Bronfman is principally relying upon § 502(a)(1).

          There can be little doubt that § 502(a)(1), which broadly allows Bronfman to
recover the "benefits due to him" and "enforce his rights under the terms of the plan," allows
Bronfman to rely upon an account stated. 29 U.S.C. § 1132(a)(1). Where, as here, the
existence or interpretation of a contract is at issue in a § 502(a)(1) claim, courts "apply a federal
common law of contract, informed both by general principles of contract law and by ERISA's
purposes as manifested in its specific provisions." *Feifer* v. *Prudential Ins. Co*., 306 F.3d 1202,
1210 (2d Cir. 2002). Since the doctrine of account stated is generally understood as a species
of contract law, *see* RESTATEMENT (SECOND) OF CONTRACTS § 282 (1981); 29 WILLISTON ON
CONTRACTS § 73:55 – 73:61, at 171-93 (4th ed. 2003); 13 SARAH HOWARD JENKINS, CORBIN ON
CONTRACTS § 72, at 449-83 (Rev. ed. 2003); *Rodkinson*, 162 N.E. at 495 (describing an account
stated as "nothing more or less than a contract express or implied between the parties"), it is

perfectly appropriate to apply those principles to Bronfman's § 502(a)(1) claim.  Defendants

have not offered any argument (much less case authority) to the contrary.[4]

V.    BRONFMAN HAS ADEQUATELY ALLEGED AN EQUITABLE ESTOPPEL
      CLAIM UNDER NEW YORK LAW AND ERISA.

            Bronfman has alleged that Defendants wrongfully denied him pension benefits

that were expressly guaranteed in three contracts.  (Compl. ¶¶ 29-31, 42.)  However, if the

Court determines that the contracts do not expressly provide him those benefits, Bronfman has

also alleged a claim for equitable estoppel, under both ERISA and New York common law.

(Compl. ¶¶ 37-41, 44.)  Defendants' challenges to these allegations are meritless.

      A.    Bronfman Has Adequately Alleged an Equitable Estoppel Claim Under ERISA.

            Bronfman has adequately alleged a claim for equitable estoppel under ERISA

because his complaint "provides fair notice" to Defendants of the claim "and the grounds on

which [it] rests." *In re Natural Gas*, 337 F. Supp. 2d at 508.  Moreover, Bronfman has pled

facts supporting all the three elements identified by the Second Circuit:  "(1) material

representation, (2) reliance and (3) damage." *Lee*, 991 F.2d at 1009.  Specifically, he has

identified and described at least six "unequivocal statements" that Defendants made, both

before and after Bronfman agreed to "opt-out" of his Employment Agreement and resign,

indicating "that Bronfman would receive the full benefit of BEP, including the maximum

service credit of 35 years."  (Compl. ¶ 20.)  He has described his extensive detrimental reliance

(and resulting damages) from those representations, which affected (i) his decision to resign,

---

[4] Defendants also cite *Lee* v. *Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993) for the proposition
that "federal courts have developed a federal common law of ERISA based on principles
developed in evolution of the law of trusts," apparently suggesting that trust law is inconsistent
with the account stated doctrine. (Def. Mem. at 11.)  To the contrary, it is well-established that
trustees and other fiduciaries may be bound by an account stated.  29 WILLISTON ON
CONTRACTS § 73:57, at 175 & n.39 (4th ed. 2003).

(ii) his subsequent negotiations with Vivendi regarding the terms of his re-employment, and (iii) his tax planning.  (Compl. ¶¶ 22-26, 41.)  This goes far beyond what Rule 8's liberal pleading rules require.  *See Green* v. *First Reliance Standard Life Ins. Co.*, No. 96 CIV. 6859 (PKL), 1997 WL 249967, at *12 (S.D.N.Y. May 12, 1997) (denying motion to dismiss by observing:  "The elements of estoppel include:  '(1) material representation, (2) reliance and (3) damage.' These elements are alleged in the complaint.") (citations omitted).

Defendants erroneously contend that Bronfman must plead conduct "tantamount to fraud."  (Def. Mem. at 13 (quoting *Aquilio* v. *Police Benev. Ass'n of New York State Troopers, Inc.*, 857 F. Supp. 190, 204-06 (N.D.N.Y. 1994).)  But, as Defendants acknowledge, that standard applies only where a beneficiary is attempting to use "informal communications to alter the meaning of official plan documents."  (Def. Mem. at 13.)  Here, Bronfman has alleged *formal* communications, in the context of negotiating his departure, with senior Vivendi executives.  (Compl. ¶ 21.)

Moreover, Bronfman does not seek to alter any "official plan documents."  Here, there is no dispute that that BEP allowed a participant to be "granted additional service by the Company."  (Bigge Aff. Ex. A § 5(b)(iii).)  The governing issue of whether Vivendi granted that service to Bronfman is determined by the contracts with Bronfman and the representations that were made to him.  If the Court determines that Bronfman was granted the additional service in question—either expressly by contract or by estoppel—the terms of the BEP would not be affected at all.

Defendants also claim that Bronfman has not pled the "extraordinary circumstances" that are generally required to recover under an ERISA equitable estoppel theory.  (Def. Mem. at 13.)  But that requirement was introduced only to "lessen the danger that

commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit plans." *Aramony* v. *United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999).  It has no application here because, again, Bronfman does not seek to change anything in the BEP, which indisputably allowed him to be "granted additional service by the Company."  (Bigge Aff. Ex. A § 5(b)(iii).)  The question here is simply whether that service was granted, either expressly or by estoppel.  Since the resolution of that issue does not risk imposing "conflicting or inconsistent . . . regulation" of the BEP's terms, *see Pilot Life*., 481 U.S. at 45-46 (citation omitted), there is no reason to require Bronfman to plead or prove extraordinary circumstances, beyond what would be required in an ordinary equitable estoppel case.

In any event, even if "extraordinary circumstances" were required in this case, it is inappropriate to decide this fact-specific issue on a motion to dismiss.  *See Green*, 1997 WL 249967, at *3  (denying motion to dismiss even though it was "not clear from the face of the complaint as it is now drafted whether any 'extraordinary circumstances' existed in this case" because "the question upon a motion to dismiss is 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims'") (citation omitted); *Cerasoli* v. *Xomed, Inc*., 972 F. Supp. 175, 180 (W.D.N.Y. 1997) (rejecting motion to dismiss ERISA equitable estoppel claim because "whether the circumstances of this case were truly extraordinary cannot be determined at this early stage of the case").

Finally, even if it were appropriate to address the issue on a motion to dismiss, the facts as pled easily demonstrate "extraordinary circumstances."  Inducements that affect retirement decisions constitute extraordinary circumstances, *De Pace* v. *Matsushita Elec. Corp. of Am*., 257 F. Supp. 2d 543, 553 (E.D.N.Y. 2003), as do "repeated misrepresentations over an

extended course of dealings between an employer and an employee." *See Pell* v. *DuPont*, No. CIV A 01-21, 2006 WL 2864604, at \*10 (D. Del. Oct. 6, 2006). Here, senior Vivendi personnel repeatedly made representations to Bronfman that affected his decision to retire, his subsequent compensation and his tax planning. (Compl. ¶¶ 21-26.) These facts are at least as extraordinary as other cases in which "extraordinary circumstances" were found and equitable estoppel applied. *See Pell*, 2006 WL 2864604, at \*1-\*14 (applying equitable estoppel, after a bench trial, where employees had reasonably relied on a company's representations about the service they had accrued, only to later claim that the service should have been reduced); *DePace*, 257 F. Supp. 2d at 553-55 (refusing to dismiss a claim of equitable estoppel where employees had reasonably relied upon a company's pension estimates that the company later claimed were erroneous); *Kaliebe* v. *Parmalat USA Corp*., No. 02 C 8934, 2003 WL 22282379, at \* 5 (N.D. Ill. Sept. 30, 2003) (refusing to dismiss equitable estoppel claim where employer had "provided repeated misinformation" to employee) (citations omitted).

**B.    Bronfman Has Adequately Alleged an Equitable Estoppel Claim Under New York Common Law.**

Defendants make three specious arguments as to why Bronfman's equitable estoppel allegations are insufficient under New York law.

First, Defendants claim that Bronfman has not alleged "that any Vivendi personnel deliberately misled Bronfman about his rights." (Def. Mem. at 14.) That is simply not the standard: "It is immaterial to a claim of estoppel that there was no actual attempt to defraud or mislead." *Columbia Broad. System, Inc*. v. *Stokely-Van Camp, Inc*., 522 F.2d 369, 378 (2d Cir. 1975) (citing *Rothschild* v. *Title Guarantee & Trust Co*., 97 N.E. 879, 880 (N.Y. 1912)); *see also Elgie & Co*. v. *S. S. S. A. Nederburg*, 599 F.2d 1177, 1180 n.6 (2d Cir. 1979) ("[E]quitable estoppel can come into being without intentional misrepresentation."). The only

- 21 -

state of mind requirement, as Defendants elsewhere acknowledge, is that the representing party "inten[d] that the other party . . . act upon" the misrepresentations.  (Def. Mem. at 14 (citing N.Y. JUR. ESTOPPEL §§ 8, 34).)  Here, the facts as alleged easily support the inference that Defendants knew or should have known that Bronfman would arrange his affairs and make decisions based on their statements.  (Compl. ¶ 21.)

Second, Defendants claim that there is no allegation that Bronfman "lacked knowledge or constructive knowledge of his actual entitlement under the pension plans."  (Def. Mem. at 14.)  This argument is difficult to comprehend, considering that Bronfman's entire complaint is premised on his belief that he is entitled to the full BEP benefit.  He certainly did not know that Defendants would seek to change his contractual entitlement after four years of paying him the proper pension amount.

Finally, Defendants' argument that it was not "reasonable for [Bronfman] to rely on the statements of persons who were not authorized to make binding interpretations of plan documents" raises what is plainly a fact question not appropriate for resolution on a motion to dismiss.  (Def. Mem. at 14-15.)  It was reasonable for Bronfman to rely on senior Vivendi personnel—including the person who signed his Termination Agreement—as to Vivendi's understanding of the terms of his separation, including the number of years of Additional Service he had been awarded.  *Compare* Compl. ¶ 20(a)-(b) (describing representations from John Borgia regarding Bronfman's BEP benefit) *with* Bigge Aff. Ex. B at 9 (reflecting John Borgia's signature on behalf of Vivendi).  Defendants are improperly arguing facts and inferences.  The allegations of the complaint plainly state a claim for equitable estoppel. [5]

---

[5] Defendants make these same specious arguments with respect to Bronfman's ERISA-based equitable estoppel claims.  (Def. Mem. at 13.)  For the same reasons discussed here, those arguments should be rejected.

**CONCLUSION**

For the reasons stated, Defendants' motion to dismiss should be denied.

Dated: June 13, 2007
      New York, New York

Respectfully submitted,

By: _____

    Gandolfo V. DiBlasi (GD-5931)
    Charles A. Michael (CM-0303)
    SULLIVAN & CROMWELL LLP
    125 Broad Street
    New York, New York  10004
    (212) 558-4000

    *Counsel for Edgar Bronfman, Jr.*